**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JULIET EVANCHO; ELISSA RIDENOUR; and A.S., a minor, by and through his parent and next friend, | : : : | Civil Action No. 2:16-cv-01537 |
| | : | Judge Mark R. Hornak |
| Plaintiffs, | : | |
| vs. | : | *Electronically Filed* |
| | : | |
| PINE-RICHLAND SCHOOL DISTRICT; DR. BRIAN R. MILLER, in his official capacity as Superintendent of the Pine-Richland School District; and NANCY BOWMAN, in her official capacity as Principal of Pine-Richland High School, | : : : : : : : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |

## DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Defendants Pine-Richland School District, Dr. Brian R. Miller and Nancy Bowman (collectively "Defendants"), by and through their attorneys, the law firm of Maiello, Brungo & Maiello, LLP, file this Proposed Findings of Fact and Conclusions of Law regarding Plaintiffs' Motion for Preliminary Injunction.

## INTRODUCTION

The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his or her case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a

preliminary injunction are not binding at trial on the merits.  *Univ. of Tex. v. Camenisch*, 451 U.S. 390 *, 101 S. Ct. 1830, 68 L. Ed. 2d 175, 1981 U.S. LEXIS 91, 49 U.S.L.W. 4468, (U.S. 1981). With these legal principles in mind, Defendants offer the following proposed findings of fact and conclusions of law.

## DEFENDANTS' PROPOSED FINDINGS OF FACT

**Plaintiffs**

1.  Plaintiffs, Juliet Evancho ("Ms. Evancho"), Elissa Ridneour ("Ms. Ridenour") and A.S. (collectively, "Plaintiffs") instituted this action by filing a Complaint on October 6, 2016. (See Doc. No. 1).

2.  Plaintiffs are transgender individuals who seek to use restroom facilities at the Pine-Richland School District (the "District") congruent with their gender identity. In other words, Plaintiffs were assigned a biological sex at birth based on their respective anatomies ("biological sex"), but identify as the opposite gender ("gender identity") and seek to utilize restroom facilities at the District congruent with their gender identity.  (See Doc. No. 1)

**Plaintiffs' Attendance at the District**

3.  As part of the District's efforts to ensure that the Plaintiffs are treated respectfully and pursuant to their gender identities, with the exception of requiring Plaintiffs to utilize restrooms corresponding to their biological sex, each Plaintiff is supported by the District based upon their expressed gender identity.  (Miller Decl. ¶ 25).

4.  By way of example, each Plaintiff is addressed at the District by their preferred name and pronoun.  (Miller Decl. ¶ 26).

263897,10787.192

5.  The District has worked with its faculty members to make them aware that the Plaintiffs are to be treated in accordance with their stated gender identity.  (Miller Decl. ¶ 26).

6.  In recognition of the importance of traditional senior year events and District traditions, the Plaintiffs are treated with respect to their stated gender identity.  (Miller Decl. ¶ 26).

7.  Ms. Evancho was a candidate for homecoming queen during her senior year.  (Miller Decl. ¶ 26; see also Bowman Decl. ¶ 23).

8.  At the time of graduation, each Plaintiff will wear the color of graduation attire in accordance with their gender identity, and their preferred names will be on their diplomas. (Miller Decl. ¶¶ 24, 25); (Miller Decl. ¶ 26).

9.  The District has made a point of working collaboratively with the Plaintiffs and their families in supporting the Plaintiffs.  (Bowman Decl. ¶ 25).

10. Nancy Bowman ("Principal Bowman") and guidance counselors serve as points of contact for the Plaintiffs at the District to report any instances where they feel threatened, harassed or bullied. (Bowman Decl. ¶ 20).

11. In this role, Principal Bowman was made aware of only three such incidents since the approval of Resolution #2 (see below); each incident being directed to one of the Plaintiffs, Ms. Evancho, and all taking place within a few days of the approval of Resolution #2:

   a.  On September 15, 2016, Ms. Evancho informed Principal Bowman that she was walking in a stairwell near the cafeteria when she encountered an unknown group of students who called her an inappropriate name and pretended to vomit.  Directly following Ms. Evancho's report, Principal Bowman investigated this incident by taking Ms. Evancho's statement and reviewing video footage of the location where the incident occurred.  Neither Principal Bowman nor Ms. Evancho were able to

identify the students involved.  In order to prevent another incident and ensure Ms. Evancho's safety and comfort, two or three District staff members patrol that area of the High School in the morning.  The staff members continue to patrol the area on a daily basis.  Additionally, either Principal Bowman or a guidance counselor personally patrol that area of the High School as much as possible.

b.  Additionally, on September 15, 2016, Ms. Evancho's sister reported an incident that had occurred between her and another student where the student vocalized a negative opinion about transgender individuals.

c.  Also, on September 16, 2016, Principal Bowman became aware of an incident wherein a student shared a picture of Ms. Evancho on the social media application Snapchat.  The picture contained the caption, "WTF".  Building administration promptly conducted an investigation of this incident, determined that the student violated the District's Code of Conduct and disciplined the student in conformance with that disciplinary policy.

(Bowman Decl. ¶ 18, Miller Decl. ¶ 27)

12. In the spring of 2016, A.S. reported that his art project had been vandalized.  The District conducted an investigation, but was unable to determine who vandalized the project. Also, A.S.'s art project contained actual currency in the form of paper money, and it is not clear whether the act of vandalism was due to any animosity toward A.S. or was simply a petty theft.  (Miller Decl. ¶ 27d)

13. The atmosphere of the District High School is a supportive environment for the Plaintiffs. (Bowman Decl. ¶ 22).

263897,10787.192

14. Plaintiffs themselves have expressed their appreciation for this supportive environment. (Bowman Decl. ¶ 27).

15. Plaintiffs' grades have not suffered, and their attendance has remained largely consistent since prior to the passage of Resolution #2.  (Miller, Decl. ¶ 28, 29; Bowman Decl.¶ 24, Ex. B).

## Resolution #2

16. On September 12, 2016, after much reasoned debate and discussion, and in response to requests by District parents to implement a policy, the Pine-Richland School District Board of Education ("School Board") approved Resolution #2. (Banyas Decl. ¶ 18, Goebel Decl. ¶ 15).

17. Resolution #2 requires all District students to utilize sex-specific facilities that correspond to their biological sex or any unisex facilities.  In addition, all students are permitted to use any of ten (10) unisex restrooms that are located throughout Pine-Richland High School. (Banyas Decl. ¶ 19; Goebel Decl. ¶ 16; Miller Decl. ¶ 4; Bowman Decl. ¶ 4).

18. Prior to the passage of Resolution #2, the School Board had taken no action on directing the use of the School District's restrooms inconsistent with the multi-user single-sex designation.  (Banyas, Decl. ¶¶ 7, 10; Goebel Decl ¶¶ 5, 8).

19. "The elimination of biologically distinct restrooms was not a process by the Board." (Pagan Decl. Ex. C, p.25-lines 14-15)


## The District Community's Concerns of Privacy

20. On January 30, 2016, it became known to a parent of a student attending the District's High School (the "Parent") that transgender girls, i.e. individuals with male genitalia who believe

263897,10787.192

themselves to be girls, were using the girls' restroom facilities in the High School without restriction. (Wiethorn Decl. ¶ 1).

21. The following day, the Parent was able to confirm through his daughter that she had personally encountered transgender girls in the girls' restroom at the High School. (Wiethorn Decl. ¶ 2).

22. Dr. Brian Miller, the District's Superintendent ("Dr. Miller), and Dr. Jeffrey Banyas, President of the School Board, met with the Parent to follow-up on his request for information. (Wiethorn Decl. ¶ 6).

23. At the meeting, the Parent expressed his concerns with respect to his daughter's fundamental right to privacy – the shielding of her unclothed figure from the view of strangers, particularly strangers of the opposite sex – as not being respected by the current restroom situation at the High School. The Parent expressed his belief that restroom usage at the District needed to be done in a manner that protected the dignity of all District students. (Wiethorn Decl. ¶¶ 7, 8).

24. These same privacy concerns and request for the District to take action respecting the rights of all students was also expressed by a majority of residents in the District community who chose to speak on the issue during the approximately six-month process of deliberation on this issue by the School Board. (Wiethorn Decl. ¶¶ 9, 11; Avallone Decl. ¶¶ 7, 8, 10, 12, 14; Banyas Decl. ¶¶ 11, 12, 13, 14, 16, 17; Goebel Decl.¶¶ 9, 10, 11, 13; Miller Decl. ¶¶ 10, 11).

25. Due to the delay in the School Board taking action regarding the use of restrooms in protection of the privacy interests of all students, the Parent withdrew his daughter from the District, and she is now attending parochial school. (Wiethorn Decl. ¶ 15, 16).

263897,10787.192

26. Ultimately, the Parent withdrew his daughter from the District and enrolled her at parochial school to ensure that her constitutionally protected right to privacy would be protected while she was in high school.  (Wiethorn Decl. ¶ 16; Miller Decl. ¶ 24).

**The School Board's Deliberative Process**

27. From the outset of its deliberative process, the School Board set forth its goals to maintain civil discourse and to encourage diverse points of view.  (Ex. "A", President's Statement).

28. The School Board acknowledged that the District, as well as other school districts around the country, were continuing to struggle with the issue of use of restrooms by gender identity rather than restricted to biological sex.  *Id.*

29. The School Board further recognized that the legal environment on the issue was unsettled and offered that it now found itself at the consensus-building phase.  *Id.*  (See also Pagan Decl. Ex. F – partial transcript of September 12 2016 meeting, p. 24, lines 17 – 20) ("School Districts everywhere are in limbo because of the disagreement or incoherence between OCR's significant guidance and the courts, and the different perspectives"); see also, (Miller Decl. ¶¶ 20 – 21) ("…shift from the commonly understood and long-standing practice of segregating restrooms based upon biological sex.  Segregation of restrooms by biological sex had been the status quo of public schools and other facilities for decades even before the implementation of Title IX.")

30. In an effort to promote awareness and informed discussion, the School Board held a public Student Services Committee information session on transgender youth.  (Ex. "B", PR Notice of Meeting).  Physicians from Children's Hospital of Pittsburgh of UPMC were invited by the School Board to provide the public with background knowledge from medical, social and psychological perspectives.  *Id.*

263897,10787.192

31. Prior to the September 12, 2016 vote on Resolution #2, the School Board was informed of the stay issued by the United States Supreme Court in August 2016 in *G.G. v. Gloucester County School Board* which meant that the transgender student at that school district was required to use the restroom consistent with his biological sex during the time period taken by that Court to make a final decision.

32. Some School Board members believed that the Supreme Court's action in issuing a stay in *G.G.* mirrored the proposed effects of Resolution #2 – to issue a stay that restrooms in the School District were to be used according to biological sex. (Pagan Decl. Ex. F – partial transcript of September 12, 2016 meeting, p. 8, lines 5 – 19) (". . . to put a stay, which is exactly what this would do…It would just put a stay…").

33. The majority of the School Board concluded that Resolution #2 represents a reasonable balance between the rights of transgender individuals and the privacy interests of students attending the Pine-Richland School District. (Banyas Decl. ¶ 24; Goebel Decl.¶ 18)

**The Presence of Unisex Restrooms at the District**

34. Prior to March 2016, at least six (6) of the ten (10) unisex restrooms located throughout the District High School were available for use at any time by any student. The remaining unisex restrooms were reserved for District staff use only. (Bowman Decl. ¶ 5).

35. As of March 2016, all ten (10) unisex restrooms were made available for student use throughout the District High School, and consistent signage outside each unisex restroom informed students of the restrooms unisex usage. (Miller Decl. ¶ 8, Ex. A; Bowman Decl.¶ 6).

263897,10787.192

36. The unisex restrooms are spread throughout the High School, and are not clustered in a single location.  Most are located near the communal, sex-segregated restrooms.  (Bowman Decl. ¶ 7).

37. District students use the unisex restrooms due to their proximity to the students' scheduled classrooms on a regular basis.  (Bowman Decl. ¶ 10).

38. The level of student usage of the unisex restrooms has remained constant before and after the passage of Resolution #2.

39. Based on the Plaintiffs' current class schedules, they would not have to travel any greater distance to use a unisex restroom than they would to use a communal restroom.  (Bowman Decl. ¶ 8).  Based upon their class schedules, the Plaintiffs are never more than a forty-five (45) second walk to any unisex restroom.  (Bowman, Decl. ¶ 9).

**Federal Funding of the District**

40. During the 2014 – 2015 school year, the District received approximately 1.4 million dollars in federal funding. (Banyas Decl. ¶ 21; Miller Decl. ¶ 16).

41. The total budget for the District was approximately $75 million.  (Miller Decl. ¶ 16).

42. For the 2015 – 2016 school year, the District received federal funding in the amount of approximately $1 million with a total budget of approximately $76.7 million.  (Miller Decl. ¶ 16).

43. The District receives the federal funding for special education programs, Title I programs and food services.  Such services are an integral part of the District's overall mission to provide the best possible education to its students.  (Miller, Decl. ¶ 17).

44. The District receives the aforementioned federal funds on the condition that it complies with Title IX. (Miller Decl. ¶ 18)

## DEFENDANTS' PROPOSED CONCLUSIONS OF LAW

1. Plaintiffs have not shown a likelihood of success on the merits of their Title IX claims. *Allegheny Energy, Inc. v. DQE, Inc*., 171 F.3d 153, 158 (3d Cir. 1999); *Campbell Soup Co. Con Agra, Inc.* 977 F. 2d 86, 90 – 91 (3d Cir. 1992) ("In order to support a preliminary injunction, plaintiff must show a likelihood of success on the merits").

   a. The *Dear Colleague Letter on Transgender Students* ("2016 DCL") issued by the Department of Education ("DOE") in May 2016 is currently the subject of a nationwide injunction from enforcement of the DOE's interpretation of "sex" under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX") as including gender identity.

   b. The DOE's interpretation of "sex" as including gender identity is currently before the United States Supreme Court on Certiorari.  Gloucester County Schools v. G.G., 2016 U.S. LEXIS 6408, 2016 WL 4565643.

   c. Separation of the sexes based upon biology is expressly authorized by Title IX's implementing regulations at 34 C.F.R. §106.33 which expressly permits a recipient to "provide toilet, locker room and shower facilities on the basis of sex [as long as] such facilities provided for students of one sex shall be comparable to such facilities provided for students of the other sex."

   d. The United States District Court for the Western District of Pennsylvania has held that facts as alleged by Plaintiffs do not support a claim for a violation of Title IX because "on a plain reading of the statute, the term 'on the basis of sex' … means nothing more than male and female, under traditional binary conception of sex

263897,10787.192

consistent with one's birth or biological sex." *Johnson v. University of Pittsburgh*, 97 F. Supp, 3d 657 (W.D.  Pa. 2015).

2.  Plaintiffs have not shown a likelihood of success on the merits of their Equal Protection claims.  *Allegheny Energy, Inc. v. DQE, Inc*., 171 F.3d 153, 158 (3d Cir. 1999); *Campbell Soup Co.  Con Agra, Inc.* 977 F. 2d 86, 90 – 91 (3d Cir. 1992) ("In order to support a preliminary injunction, plaintiff must show a likelihood of success on the merits).

   a.  United States Supreme Court precedent and persuasive authority in this District Court support Defendants' position that physiological characteristics distinguish men and women for purposes of bodily privacy.  *United States v. Virginia*, 518 U.S. 515, 540 – 46, 550, n. 19 (1996); *Tuan Anh Nguyen v. Immigration and Naturalization Serv.* 533 U.S. 53 (2001); *Johnson v. University of Pittsburgh*, 97 F. Supp, 3d 657 (W.D.  Pa. 2015).

   b.  The law permits distinctions between male and females on the basis of birth sex where not based upon irrational or uncritical analysis. *Tuan Anh Nguyen v. Immigration and Naturalization Serv*., 533 U.S. 53, 64, 68 (2001).

   c.  Failing to treat transgender females and males in the use to restrooms in the same manner as cisgender females and males is not based on an impermissible classification or stereotype.  *United States v. Virginia*, 518 U.S. 515, 540 – 46, 550 n. 19 (1996); *Tuan Anh Nguyen v. Immigration and Naturalization Serv*. 533 U.S. 53 (2001).

   d.  Separating students by sex based on biological considerations – which involves the physical differences between men and women – for restroom use does not violate

263897,10787.192

the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

    e.   Resolution #2 is rationally related to the District's purpose in protecting the privacy of all its student in the use of private facilities. *Johnson v. University of Pittsburgh*, 97 F. Supp, 3d 657 (W.D. Pa. 2015).

    f.   The District's approval of Resolution #2 arises from a recognition of the physiological differences between males and females, not from an improper, discriminatory classification. *United States v. Virginia*, 518 U.S. 515, 540 – 46, 550, n. 19 (1996*); Tuan Anh Nguyen v. Immigration and Naturalization Serv*., 533 U.S. 53 (2001); *Johnson v. University of Pittsburgh*, 97 F. Supp, 3d 657 (W.D. Pa. 2015).

3.   Plaintiffs have not shown that they will suffer immediate, irreparable harm. *Allegheny Energy Inc. v. DQE, Inc.,* 171 F. 3d 153, 158 (3d Cir. 1999); *Campbell Soup Co. v. ConAgra, Inc*. 977 F. 2d 86, 90 – 91 (3d Cir. 1992); *Hohe v. Casey*, 868 F. 2dd 69, 72 (3d Cir. 1989).

    a.   Plaintiffs fail to meet their burden because they only offer possible, speculative and remote injuries that may occur in the indefinite future. *Dice v. Clinicorp Inc*., 887 F. Supp. 803, 809 (W.D. Pa. 1995).

    b.   Plaintiffs' allegations of "significant educational, psychological and physical harms" are harms that monetary damages compensate and do not meet the requisite standard of irreparable harm. Plaintiffs have not shown injuries that cannot be compensated by monetary damages and thus fail to meet the requisite irreparable

harm for injunctive relief. *Adams v. Freedom Forge Corp.*, 204 F. 3d 475, 485 (3d Cir. 2000).

c.  Plaintiffs' alleged harm caused by their rejection of using the School District's unisex restrooms located throughout the High School is a harm caused by their refusal and rejection of a permissible alternative.  (Evancho Decl. ¶ 48; Ridenour Decl. ¶ 35; A.S. Decl. ¶ 34).  An injunction will not issue "to restrain one from doing what he [or she] is not attempting and does not intend to do*." Continental Group, Inc.  v. Amoco Chems. Corp.*, 624 F. 2d 351 (3d Cir. 1980).

d.  Plaintiffs' claims of being "marginalized and separated from the student body" in being forced to use the unisex restrooms are discredited by the fact that all District students are welcome to use, and do in fact use, the unisex restrooms.  (Evancho Decl. ¶ 49; Ridenour Decl. ¶ 36 – 37; A.S. Decl. ¶ 25; Bowman Decl ¶¶ 10 – 12; Pasquinelli Decl. ¶¶ 7 – 8)

e.  There exists no "stigma" or "marginalization" associated with the use of the unisex restrooms at the District High School. (Bowman Decl. ¶¶ 10 – 12; Pasquinelli Decl. ¶¶ 7 – 8).

f.  Plaintiffs' education is not disrupted or impeded in the use of the District's unisex restrooms.  Ten unisex restrooms are readily available to all Plaintiffs and in sections of the High School that are in close proximity to where they attend classes. (Bowman Decl. ¶¶ 9 – 12; Pasquinelli Decl.¶¶ 7 – 8).  "Irreparable harm will not be found where alternatives already available to the plaintiff make an injunction unnecessary." *Curtis 1000, Inc. v. Youngblade*, 878 F. Supp. 1224, 1248 (N.D. Iowa 1995).

g.  Plaintiffs' do not meet the threshold for presuming irreparable harm because there are no First Amendment freedoms at issue and there are not any injuries to Plaintiffs that are actually occurring.  *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed. 547 (1976) (finding loss of First Amendment freedoms constitutes irreparable injury because threatened and occurring).

4.  Plaintiffs have not shown that the injuries they allegedly face outweigh those which would be sustained by Defendants as a result of the injunctive relief.

a.  Where a plaintiff fails, as in this instant matter, to reach their threshold showings of likelihood of success on the merits and irreparable harm, the injunction is denied and the court is not required to address the balance of harm.  *Girl Scouts of Monitou Council Inc, v. Girls Scouts of the United States of America*, 549 3d  1079, 1089 (7th Cir. 2008).

b.  Plaintiffs' allegations of harm do not meet the standards for injunctive relief.

c.  The District will be harmed if the long-standing use of restrooms based upon biological sex will be overturned.

d.  An unnecessary tension in the High School will exist between the important interest in the protection of the bodily privacy rights of all of District students and Plaintiffs' asserted rights.  (Miller Decl. ¶ 22).

e.  The rigorous debate would continue and distract from the educational programs until an ultimate determination on this issue is made. (Miller Decl. ¶ 23).

f.  Disrupting the status quo will distract from the District's primary mandate of providing the best education for its students.  (Miller Decl. ¶ 23).

263897,10787.192

g. Plaintiffs are seeking a preliminary order for the District to take action that goes well beyond simply maintaining the status quo and is disfavored as granting Plaintiffs the ultimate relief they seek. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981).

h. Plaintiffs' claims present questions concerning the protections offered under Title IX and Equal Protection that are not developed fully in the law, and should be developed fully at trial and not at the preliminary injunctive stage. *Capital Associated Indus. v Coooper* 129 F Supp 3d 281, 288 – 89 (M.D.N.C. 2015).

5. Plaintiffs have not shown that injunctive relief would not adversely affect public interests.

a. Entering a preliminary injunction against a school district implicates the public's interests. *Illinios Psychological Assoc. v. Falk*, 818 F. 2d 1337, 1340 (7th Cir. 1987).

b. It is only when a school board has transcended the limits of its legal discretion that it is amenable to the injunctive process. *Zebra v. School Dist of the City of Pittsburgh*, 449 Pa. 432, 437 296 A. 2d 867 (1964).

c. Courts are restrained, when dealing with matters of school policy, by the long-established salutary rule that the courts should not function as super school boards. *Zebra v. School Dist of the City of Pittsburgh*, 449 Pa. 432, 437 296 A. 2d 867 (1964).

d. The courts do not interfere with matters of school policy unless the action was based on a misconception of the law, ignorance through lack of inquiry, or the result of arbitrary will or caprice *Zebra v. School Dist of the City of Pittsburgh*, 449 Pa. 432, 437 296 A. 2d 867 (1964).

263897,10787.192

e.   The District, after much reasoned debate, information gathering and discussion approved Resolution #2.  (Banyas, Decl. ¶ 18, Goebel Decl. ¶ 15).

f.   Resolution #2 requires all District students to utilize sex-specific facilities that correspond to their biological sex or any unisex facilities.  In addition, all students are permitted to use any of ten (10) unisex restrooms that are located throughout the High School.  (Banyas Decl. ¶ 19; Goebel Decl. ¶ 16; Miller Decl. ¶ 4; Bowman Decl. ¶ 4).

g.   A District parent expressed his concerns with respect to his daughter's fundamental right to privacy – the shielding of her unclothed figure from the view of strangers, particularly strangers of the opposite sex – as not being respected by the current restroom situation at the High School.  The parent expressed his belief that restroom usage needed to be done in a manner that protected the dignity of all District students. (Wiethorn Decl. ¶¶ 7, 8).

h.   These same privacy concerns were expressed by a majority of members of the District community who chose to speak on the issue during the approximately six-month process of deliberation on this issue.  (Wiethorn Decl. ¶¶ 9, 11; Avallone Decl. ¶¶ 7, 8, 10, 12, 14; Banyas Decl. ¶¶ 11, 12, 13, 14, 16, 17; Goebel Decl.¶¶ 9, 10, 11, 13; Miller Decl. ¶¶ 10, 11).

i.   The public interest does not favor forcing the District to change a long-standing societal practice of single-sex designated facilities; a practice recognized as legally compliant under Title IX regulations since 1980.  34 C.F.R. §106.33.

263897,10787.192

j.   The District clearly has an important interest in protecting the privacy interests of
all students in these intimate facilities.   *United States v. Virginia*, 518 U.S. 515,
540-46, 550, n. 19 (1996).

k.   Resolution #2 serves this important and legitimate interest of the District.

RESPECTFULLY SUBMITTED,

MAIELLO, BRUNGO & MAIELLO, LLP


*/s/ Christina Lane*
Christina Lane, Esquire
Pa. I.D. #83677
cll@mbm-law.net
Alfred C. Maiello, Esquire
Pa. I.D. #00801
acm@mbm-law.net
Michael L. Brungo, Esquire
Pa. I.D. #46555
mlb@mbm-law.net
Roger W. Foley, Jr., Esquire
Pa. I.D. #73936
rwf@mbm-law.net
Gary H. Dadamo, Esquire
Pa. I.D. #93292
ghd@mbm-law.net
Peter J. Halesey, Esquire
Pa. I.D. #313708
pjh@mbm-law.net

*(Attorneys for Defendants)*

263897,10787.192

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 14th day of November, 2016, I have filed the foregoing **Defendants' Proposed Findings of Fact and Conclusions of Law regarding Plaintiffs' Motion for Preliminary Injunction** with the Clerk of Courts via the District Court Electronic Case Filing System which will send notification of such filings to the following counsel of record:

Omar Gonzalez-Pagan, Esquire
Lambda Legal Defense and Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY 10005

Christopher R. Clark, Esquire
Kara N. Ingelhart, Esquire
Lambda Legal Defense and Education Fund, Inc.
105 West Adams Street, Suite 2600
Chicago, IL 60603

Tracie L. Palmer, Esquire
David C. Williams, Esquire
Kline and Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102

MAIELLO, BRUNGO & MAIELLO, LLP

*/s/Christina Lane*
Christina Lane, Esquire
Pa. I.D. #83677
Alfred C. Maiello, Esquire
Pa. I.D. #00801
Michael L. Brungo, Esquire
Pa. I.D. #46555
Roger W. Foley, Jr., Esquire
Pa. I.D. #73936
Gary H. Dadamo, Esquire
Pa. I.D. #93292
Peter J. Halesey, Esquire
Pa. I.D. #313708

*(Attorneys for Defendants)*

263897,10787.192